This is an appeal from a summary judgment entered by the Circuit Court of Mobile County against plaintiff, Lady Corinne Trawlers, Inc. We affirm.
On October 20, 1983, plaintiff corporation filed suit against several defendants for damages allegedly sustained as a result of "breakdowns" of its fishing vessel, the "Lady Corinne." Plaintiff asserted that defendants Union Indemnity Insurance Company and Zurich Insurance Company issued insurance policies covering the fishing vessel through their agent, Molton, Allen and Williams Corporation, and that another defendant, Commercial Claims Services, reviewed plaintiffs claims for loss. Plaintiff further alleged in its complaint that Saunders Engine Company negligently repaired the fishing vessel on several occasions and that, as a result, it suffered economic loss.
In March 1985, plaintiff entered into an agreement with Saunders Engine Company whereby Saunders paid the plaintiff $55,000.00 and, in return, plaintiff executed a release in favor of Saunders and filed a motion with the court to dismiss Saunders from the action, which the court granted.
The court then granted summary judgment in favor of Molton, Allen and Williams, which left as defendants Union Indemnity, Zurich, and Commercial Claims Services. On December 31, 1985, the remaining defendants filed a motion for summary judgment, and the court granted it as to all three defendants. In its brief on appeal, however, plaintiff questions the propriety of the court's summary judgment only as to Zurich Insurance Company.
The issue of whether the trial court erred when it granted summary judgment in favor of Zurich is to be determined upon an interpretation of two main documents — the release, and the contract of insurance between Zurich and the plaintiff. The release, in pertinent part, states:
 WHEREAS, the parties hereto have reached a compromise settlement and Lady Corinne Trawlers, Inc. and William A. Schollian are desirous of settling all claims as a result of said allegedly faulty and defective repairs made to the "Lady Corinne";
 NOW, THEREFORE, in consideration of the sum of FIFTY-FIVE THOUSAND AND NO/100 ($55,000.00) DOLLARS, paid by or on behalf of Saunders Engine Co. and The Hartford Insurance Company, hereinafter referred to as PAYERS, paid to Lady Corinne Trawlers, Inc. and William A. Schollian, the receipt and sufficiency of which is hereby acknowledged, Lady Corinne Trawlers, Inc. and William A. Schollian do hereby release and forever discharge said PAYERS, *Page 917 
their agents, servants, employees, officers, directors and representatives of and from all claims, damages, actions, causes of action, suits at law, or in equity, arising, or to arise as a result of said allegedly faulty and defective repairs to the "Lady Corinne" described above, including future developments thereof. . . .
The contract of insurance contains a clause which specifically addresses agreements of this kind. That clause provides:
 Upon making payment under this policy the Company shall be vested with all of the assured's rights of recovery against any person, corporation, vessel or interest and the assured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.
 Any agreement, contract or act, past or future, expressed or implied, by the assured whereby any right of recovery of the assured against any vessel, person or corporation is released, decreased, transferred or lost which would, on payment of claim by this Company, belong to this Company but for such agreement, contract or act shall render this policy null and void as to the amount of any such claims, but only to the extent and to the amount that said agreement, contract or act releases, decreases, transfers, or causes the loss of any right of recovery of this Company, but the Company's right to retain or recover the full premium shall not be affected. [Emphasis added.]
In its motion for summary judgment, Zurich argued that plaintiff violated the express terms of the contract of insurance, destroyed Zurich's subrogation rights, and discharged Zurich's obligations under the insurance contract when it executed the release in favor of Saunders. Plaintiff argues that the summary judgment was erroneous because Zurich, by its conduct, either waived its subrogation rights or was not entitled to any; or, alternatively, that Zurich's subrogation rights were not lost as a result of the release because it was executed subject to Zurich's subrogation rights. We disagree with both arguments advanced by plaintiff.
First, with respect to plaintiffs waiver argument, the president of Lady Corinne Trawlers, William Schollian, admitted in his deposition that his corporation had received a series of letters from Zurich in which Zurich acknowledged liability in full for the largest of plaintiff's three claims, acknowledged liability for almost the entire amount of the second claim (Zurich offered $9,000.00 on a net claim of approximately $11,000.00), and offered to pay 50% of the remaining claim, which the repair records showed was highly questionable. In addition, on the two claims that Zurich did not offer to pay in full it set forth clear reasons why it did not think full payment was warranted. Zurich even offered to advance the cost of repairs of the vessel's latest breakdown, even though it knew that plaintiff was contemplating selling the vessel. Finally, Zurich offered to allow judgment to be taken against it, pursuant to Rule 68, A.R.Civ.P., more than two months prior to plaintiffs settlement with Saunders, but plaintiff rejected the offer.
In his affidavit in opposition to summary judgment, Schollian states that the plaintiff corporation was forced to file suit against Saunders Engine Company and others due to the refusal of Zurich to pay for the losses suffered as a result of the breakdowns of the fishing vessel. The affidavit further states that the denials were made with no legitimate or arguable reason for them. Plaintiff argues on appeal that this language in the affidavit is enough to show that Zurich either waived its subrogation rights, or was not entitled to any, as a result of its conduct, and that this should preclude a summary judgment in its favor.
It is clear not only that Zurich did not deny payment of the claims, but that it made reasonable efforts to resolve the claims. In his deposition, Schollian acknowledged receipt of letters from Zurich by which Zurich tried to settle all the claims. Schollian cannot now be allowed to directly contradict his prior sworn statement just to create an issue of fact in an *Page 918 
attempt to avoid summary judgment. Van T. Junkins Assoc. v.U.S. Industries, 736 F.2d 656 (11th Cir. 1984). In that case, the Eleventh Circuit Court of Appeals ultimately upheld a summary judgment, holding that a district court may find an affidavit to be a sham when it merely contradicts, without valid explanation, testimony on deposition. We agree with that court's reasoning and are of the opinion that it should be applied in the instant case. See, also, Faith, Hope and Love,Inc. v. First Alabama Bank of Talladega County, N.A.,496 So.2d 708, 713 (Ala. 1986).
After reviewing the actions of Zurich, we cannot say that its conduct should cause it to lose its subrogation rights.
Plaintiff's second argument is that the release was executed subject to Zurich's subrogation rights and, therefore, that these rights were not lost. Plaintiff cites as support for this argument the case of Miller v. Auto Owners Insurance Co.,392 So.2d 1201 (Ala.Civ.App. 1981), wherein the Court of Civil Appeals stated that a release will be regarded as subject to the rights of the insurer-subrogee if the tort-feasor has notice or knowledge of the insurer's subrogation rights at the time the release is executed by the insured. In Miller, however, the insurer had already paid the insured's claim under its collision coverage, and the insured, in return, then assigned the rights, title, and interest to all claims resulting from the accident through a subrogation agreement with the insurer. This Court noted in Barnes v. Tarver,360 So.2d 953 (Ala. 1978), the following rule:
 "Before subrogation or substitution can be decreed, or the right thereto declared to exist, the insurer must have paid the insured his loss according to the contract." [Emphasis added.]
360 So.2d at 956, quoting Aetna Insurance Co. v. Hann, 196 Ala. 234,240, 72 So. 48, 51 (1916). Another difference betweenMiller and the case at bar is that in Miller, the insurance company had initiated litigation to enforce its subrogation rights two weeks prior to the settlement between the tort-feasor and the insured. In the instant case, no suit had been filed because Zurich's subrogation rights had not yet ripened, due to its failure to reach agreement with the plaintiff on what was owed under the policy. Thus, at the time the plaintiff executed the agreement with Saunders, it was still the owner of any claims against Saunders, and by totally releasing Saunders from any claim against it, the plaintiff effectively destroyed Zurich's rights to subrogation from Saunders.
By executing a release with Saunders, plaintiff breached an express term of its contract of insurance with Zurich. Having settled all claims against Saunders, it rendered the contract of insurance "null and void as to the amount of any such claims," and, therefore, the plaintiff has no right to recover against Zurich. This legal principle is explained in Barnes v.Tarver, supra, wherein this Court reasoned: "The right to the insurer's subrogation is dependent upon its liability to [the insured], which in turn is dependent upon [the tort-feasor's] liability to [the insured]." 360 So.2d at 956. In this case, Zurich's right to subrogation is dependent ultimately upon Saunders's liability to the plaintiff, which plaintiff released by the agreement.
For all of the above-stated reasons, the judgment of the trial court in favor of Zurich Insurance Company is affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and STEAGALL, JJ., concur.