The plaintiff appeals from a summary judgment for the defendants in a case alleging civil conspiracy, trespass, burglary, theft, and violation of civil rights. The issues are (1) whether the trial court erred in excluding the deposition testimony of informant John Mitchell on the ground that it was inconsistent with his prior affidavit and if so, then (2) whether that deposition, taken with the other evidence, provided substantial evidence in support of the plaintiff's claims.
The plaintiff, Charles McAlpin, is a resident of Decatur, Alabama. Late in the afternoon on July 26, 1989, John Mitchell and Timothy Lynn (Tim) Cannon broke into McAlpin's home. Mitchell was an occasional informant to then Lieutenant, now Captain, Walter Glenn (Bubba) Price, who headed the vice and narcotics division of the Morgan County Sheriff's Department. Sometime before the burglary of McAlpin's home, Mitchell had contacted Lt. Price with information concerning Cannon's involvement in the burglary of the home of Doris Middlebrook. Lt. Price referred Mitchell to Detective Michael Anthony Pettey, who works for the Decatur Police Department and who was investigating the Middlebrook burglary. Mitchell was not able to provide sufficient information to arrest Cannon. Detective Pettey told Mitchell to contact him if he obtained any further information regarding any past or future burglaries involving Tim Cannon.
On July 26, 1989, the day of the McAlpin burglary, Mitchell called Detective Pettey at approximately 3:45 p.m. and told him that there would probably be a break-in at McAlpin's home. Detective Pettey testified that he went out to McAlpin's residence, but that no one was home. He said that he then telephoned McAlpin's home and left a message on McAlpin's answering machine. The plaintiff claims that Detective Pettey did not call because, he says, there was no message on his answering machine.
Shortly after Pettey says he made the telephone call, Mitchell called Detective Pettey again and told him that he and Cannon were about to leave to break into the McAlpin residence. Detective Pettey and other officers immediately proceeded to the McAlpin residence.
Detective Pettey testified that upon arrival at the McAlpin residence he checked again to verify that no one was home, and that he and the other officers then hid behind a fence in *Page 613 
the back yard and waited. He said that approximately five minutes later they saw an automobile pull into the driveway. Detective Pettey said he saw Mitchell and Cannon exit the car and break into the house. He came from behind the fence and arrested Mitchell and Cannon as they left the house. The police found on Cannon a .357 revolver, which they seized.
The next day, Detective Pettey testified, he went to McAlpin's house and informed him of the burglary and of the suspects who had been arrested. McAlpin denies that this meeting occurred; he says that he went to the police two days after he discovered the burglary and asked about his gun, but that Detective Pettey refused to discuss the gun unless McAlpin had a serial number. McAlpin claims that the police have yet to return his gun to him.
McAlpin filed his complaint on July 26, 1991, exactly two years after the burglary took place, alleging civil conspiracy, trespass, burglary, theft, and violation of civil rights against Detective Pettey, the City of Decatur, Lt. Price, and Morgan County. He alleged that Detective Pettey, three or four days in advance, had had knowledge of plans to burglarize his residence and that Pettey had persuaded Mitchell to arrange the burglary in order to "set up" Cannon for arrest.
On February 20, 1992, John Mitchell signed an affidavit, stating in part:
 "Officer Mike Petty [sic] did not participate in the planning of the burglary of the McAlpin residence. This was done solely by Tim Cannon and myself. Officer Petty [sic] had told me to contact him anytime I found out about a burglary that Tim Cannon was going to carry out. He did not select the McAlpin residence. He did not instruct me as to how to plan the burglary. He did not tell me how he would go about apprehending Tim Cannon at the time. His only knowledge was my tip that the burglary was going to happen on July 26, 1989, when I first called him earlier in the afternoon and, then, later when I called him to tell him that we were leaving immediately to carry out the burglary. . . . I represent unto this court that no employee or agent of Morgan County was involved in the operation other than Lt. . . . Price's referral of me to Officer Petty [sic] with the City of Decatur."
Mitchell's deposition was taken on June 18, 1992. In it, Mitchell contradicted his prior affidavit, saying that at least three or four days before the burglary he had discussed his plan to set up Cannon. Mitchell also said in his deposition that the affidavit had been drafted by Lt. Price's lawyer and that when he signed it he did not read it in its entirety; he said that he "would have signed anything they put in front of me just to get rid of it."
The defendants filed motions for summary judgment; they supported those motions with evidence creating a prima facie showing that there was no genuine issue of material fact and that they were entitled to a judgment as a matter of law.See Rule 56, Ala.R.Civ.P. The trial court struck Mitchell's deposition testimony and refused to consider it, because it was inconsistent with his prior affidavit. The trial court then granted the defendants' motions for summary judgment.
McAlpin claims that the trial court erred in striking Mitchell's deposition. He argues that the defendants and the trial court erroneously rely on Doe v. Swift, 570 So.2d 1209,1214 (Ala. 1990), Couch v. Woody Anderson Ford, Inc.,558 So.2d 888, 889-90 (Ala. 1989), Robinson v. Hank Roberts, Inc.,514 So.2d 958, 961 (Ala. 1987), and Lady Corinne Trawlers, Inc. v.Zurich Ins. Co., 507 So.2d 915, 917-18 (Ala. 1987), to support their position that McAlpin may not create a genuine issue of fact by submitting testimony of Mitchell, a nonparty witness, that contradicts his earlier sworn testimony. The problem in relying on those cases is that each of them concern contradictory testimony from a party to the action, rather than from a nonparty witness. In Tittle v. Alabama Power Co.,570 So.2d 601, 604 (Ala. 1990), this Court said:
 "This Court has held that when a party to an action has given clear answers to unambiguous questions that negate the existence of any genuine issue of fact, that party cannot later create an issue of fact by submitting an affidavit that directly contradicts, without explanation, that earlier *Page 614 
testimony. That rule is based on the concern that such an affidavit might be a sham. Robinson v. Hank Roberts, Inc., 514 So.2d 958, 961 (Ala. 1987); Lady Corinne Trawlers v. Zurich Ins. Co., 507 So.2d 915, 917-18 (Ala. 1987); see also Van T. Junkins Associates, Inc. v. U.S. Industries, Inc., 736 F.2d 656, 657 (11th Cir. 1984).
 "Nichols was not a party to this action, and to date this Court has applied the rule stated in Robinson and Lady Corinne Trawlers only to parties, recognizing the motivation they might have to fabricate a sham affidavit. There is no reason to assume that disinterested third parties possess the same motive, and thus, the logic that supports the application of the rule to parties is not present."
Because the rule excluding a sworn statement that contradicts a prior sworn statement applies only to statements by parties, we hold that the trial court erred in excluding the deposition of John Mitchell.
Having decided that Mitchell's deposition was improperly excluded, we find the issue to be whether Mitchell's deposition, considered with the other evidence presented, provides "substantial evidence" to create a genuine issue of material fact, because "we will affirm a summary judgment if it was properly granted, notwithstanding the fact that the trial court gave the wrong reasons for granting it."McMillan, Ltd. v. Warrior Drilling Eng. Co., 512 So.2d 14, 26
(Ala. 1986).
Mitchell's deposition indicates that he told Detective Pettey three or four days before the McAlpin burglary about his plan to set up Tim Cannon and that he talked with Detective Pettey several times before the burglary took place. Mitchell stated that he picked the house and then informed Detective Pettey of the location. Mitchell's deposition indicates that Detective Pettey did not pick the house to be burglarized. Mitchell also stated that Lt. Price did not know the McAlpin residence was going to be burglarized before the burglary occurred.
Mitchell's testimony does not provide sufficient evidence to meet the plaintiff's burden and to preclude summary judgment. There is no evidence that Detective Pettey or anyone else in the Decatur Police Department arranged for the burglary of the McAlpin residence. Likewise, there is no evidence that Lt. Price or anyone else in the Morgan County Sheriff's Department was involved in this burglary. It is clear that Mitchell made all of the plans. Mitchell merely informed Detective Pettey of his plan to burglarize a house — a house that Mitchell himself had chosen. After being notified that the burglary was about to take place, Detective Pettey and other officers went to the McAlpin home and arrested the burglars. There is a disputed fact as to whether Detective Pettey attempted to notify McAlpin of the impending burglary, but the evidence that he did not is not sufficient to support the plaintiff's claims. The evidence reveals no conduct on the part of the defendants that would subject them to liability. Therefore, we hold that the trial court erred in excluding the deposition of John Mitchell but that the entry of summary judgment in favor of the defendants was proper, because McAlpin failed to meet his burden of presenting substantial evidence. The judgment of the trial court is affirmed.
AFFIRMED.
HORNSBY, C.J., and SHORES, STEAGALL and INGRAM, JJ., concur.