MOORE, Judge.
 

 Robin L. Strange appeals from a summary judgment entered by the Marshall Circuit Court in favor of Allen Davis in an action arising from the aborted sale of a house located in Albertville. We affirm in part and reverse in part.
 

 The following facts are based on the materials the parties submitted to the circuit court in support of and in opposition to Davis’s motion for a summary judgment. In 1995, Davis and his sister acquired by warranty deed a house located in Albertville. In May 2002, Strange contacted Davis about possibly purchasing the house, which was advertised for sale. After several conversations, on May 26, 2002, Davis and Strange met at the house and reached an oral agreement by which Strange agreed to purchase the house for $35,000, with a $4,000 down payment and Davis’s financing the balance because of Strange’s bad credit rating.
 
 [1]
 
 Kelly Wilson, a friend of Strange’s who had been holding some funds for Strange, tendered a check to Davis for $4,000 at that meeting.
 
 [2]
 
 ’
 
 [3]
 
 Davis then informed Strange that he would take care of the “paperwork,” which both parties understood to mean the documentation of the transaction, and that he would provide Strange an amortization schedule so that she could deduct the interest on her payments on her income-tax returns. Strange and Wilson both stated in their affidavits that Davis had said he would have the paperwork available “in a few days.” Davis gave Strange the keys to the house and told Strange she could move into the house whenever she was ready.
 

 Davis testified that he subsequently contacted his attorney to prepare the necessary paperwork memorializing the parties’ agreement. According to the attorney’s legal secretary, the attorney informed her that Davis would soon be in the office to provide her with information regarding the transaction; Davis visited the office near the end of June or the first of July and told the secretary the purchaser’s name and the financial terms of the transaction; and, based on that information, the secretary drafted a document entitled “Lease
 
 *1112
 
 With Option to Purchase and Contract of Sale” (“the document”) in which she characterized the $4,000 down payment in that document as a “non-refundable purchase option payment.” The secretary also testified that she then left the document in the attorney’s office for his review but that the attorney never returned it to her for any corrections and the document remained in a file in the attorney’s office. Strange and Wilson, who both learned of the document during the litigation, attested that the document did not accurately memorialize the transaction.
 

 According to the secretary, over the next few months, Davis would stop by periodically and indicate to her that he was trying to “get a hold” of Strange for her to come into the office, but Davis never requested that the secretary try to contact Strange. Davis testified that he had identified to Strange the attorney who was drafting the paperwork and had asked Strange to go to the attorney’s office to review the draft of the paperwork. Davis further testified that he had inquired of the attorney’s office on several occasions whether Strange had reviewed the paperwork and that he was told on each occasion that Strange had not visited the office. In her deposition, Strange denied that Davis had ever told her who the attorney was, and she testified that she had never asked. In her affidavit, Strange further attested that Davis had told her that his attorney was drafting the paperwork but that Davis had never told her that the paperwork was ready or asked her to review the paperwork. Neither Davis nor Strange reviewed the document during this period.
 

 During the several months the document remained in the attorney’s office, Strange made monthly payments of $369
 
 [4]
 
 to Davis through Davis’s assistant. Strange stated in her affidavit that she had expected to receive the paperwork regarding the transaction within a few days of the parties’ entering into the oral agreement. She testified in her deposition that, on each occasion she made a payment, she had inquired of Davis’s assistant as to the status of the paperwork. Strange also testified that, on one occasion, she overheard Davis inform his assistant over a radio that the paperwork was not yet complete and that Davis would contact Strange once Davis had obtained the paperwork. Strange further testified that she also spoke with Davis “a few times” about the paperwork, which Davis denied. According to Strange, on one occasion, Davis informed Strange that he had encountered a problem obtaining the paperwork because “something was going on with the attorney’s wife,”
 
 [5]
 
 but, Strange said, Davis had promised he would give Strange the paperwork as soon as it was ready. At that time, Strange believed that Davis would provide the paperwork and that Davis was telling the truth about the attorney’s wife. Strange did not inform Davis that, unless she received the paperwork promptly, she would move out of the house without making any further payments.
 

 Strange testified that, after more time lapsed without Davis producing the paperwork, she eventually felt that Davis did not
 
 *1113
 
 intend to give her the paperwork. Strange spoke with Wilson and contacted an attorney. Based on those conversations, Strange concluded that she needed the paperwork Davis had promised to deliver to assure her legal rights to the house and that she should withhold further payment until she received the paperwork. Strange testified that she then telephoned Davis and told him that, if she did not receive the paperwork, she was not going to pay the October 2002 payment. Strange was not sure whether that telephone call occurred before or after the October payment was due. Davis denied that Strange had ever requested the paperwork from him, and he stated that, if she had, he would have directed her to the attorney’s office.
 

 When Strange did not make the payment due on the first of October, Davis informed Strange’s adult daughter who lived in the house, in two separate conversations using what the daughter described in her affidavit as a “hateful tone,” that he considered himself the owner of the house, that he did not authorize any of Strange’s other relatives to reside in the house,
 
 [6]
 
 and that he would evict Strange if Strange did not remit the October payment by October 15. Strange testified that she considered those statements to be harassing. Strange contacted her attorney, and her attorney drafted a letter to Davis in which the attorney indicated that Strange had withheld the October payment due, in part, to Davis’s failure to provide Strange the paperwork. The letter further stated that Strange no longer wanted to buy the house and that she would vacate the house upon Davis’s returning to Strange the $4,000 down payment she had made or by November 1, 2002. The letter further stated that the monthly payments could be treated as rent, but it threatened that litigation would be commenced if the full down payment was not returned to Strange.
 

 Davis testified that he received the letter from Strange’s attorney. Strange testified that Davis telephoned her about the letter and that she told Davis that she had had her attorney send the letter because she had not received the paperwork and because she felt like she could be thrown out of the house at any time without it. According to Strange, Davis told her that she should not have sent the letter and that, if she did not pay the October payment, she would need to move. In her affidavit, Strange added that, during that telephone conversation, Davis did not tell her that he had the paperwork or that he would provide her the paperwork and he did not direct her to the attorney’s office to review the paperwork. Davis recalled having talked to Strange about her not making the October payment, but he did not recall her mentioning his failure to provide her the paperwork as her reason for not having made the payment.
 

 Strange and her family vacated the house on November 1, 2002. Strange testified that she felt it was best for her to vacate the house because Davis had failed to provide the paperwork he had promised and he did not “hold[ ] up his end of the agreement.” Strange testified that she had not wanted to vacate the house and that she had been happy living in the house but that she had vacated the house despite the fact that she was not actually evicted. Davis did not refund the $4,000 down payment to Strange. In her affidavit, Strange stated that Davis had informed her that he had kept the down payment to cover the costs of replacing the
 
 *1114
 
 carpet in the house, which, Davis claimed, had been damaged by Strange’s family; however, Strange attested that the carpet had not been damaged and that she had had the carpets professionally cleaned before vacating the house. Davis also testified that he had not replaced the carpet but that he had merely had the carpet cleaned for $50 or $100.
 

 On December 9, 2002, Strange filed a four-count complaint against Davis asserting claims of breach of contract, fraud, harassment, and wrongful eviction. Davis filed an answer and a counterclaim in early 2003. The case went to trial on January 9, 2006, but a mistrial was declared. On July 6, 2007, Davis moved for a summary judgment on all claims asserted in the complaint; Strange filed a response to the summary-judgment motion on August 17, 2007. The circuit court granted the motion for a summary judgment on November 26, 2007. Strange appealed to this court on January 11, 2008. This court dismissed that appeal as being from a nonfinal judgment on July 3, 2008. The circuit court then dismissed Davis’s counterclaim, rendering the summary judgment final on July 7, 2009. Strange then appealed to this court on August 11, 2009. This court subsequently granted Strange’s motion to incorporate the record from the first appeal.
 

 On appeal, Strange argues that the circuit court erred in granting the motion for a summary judgment on each count asserted in the complaint.
 

 Our standard of review in cases in which a summary judgment has been entered is well settled:
 

 “ ‘ “ ‘This Court’s review of a summary judgment is
 
 de novo. Williams v. State Farm Mut. Auto. Ins. Co.,
 
 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.;
 
 Blue Cross & Blue Shield of Alabama v. Hodurski,
 
 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant.
 
 Wilson v. Brown,
 
 496 So.2d 756, 758 (Ala. 1986). Once the movant makes a pri-ma facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce “substantial evidence” as to the existence of a genuine issue of material fact.
 
 Bass v. SouthTrust Bank of Baldwin County,
 
 538 So.2d 794, 797-98 (Ala.1989); Ala.Code 1975, § 12-21-12. “[Sjubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.”
 
 West v. Founders Life Assur. Co. of Fla.,
 
 547 So.2d 870, 871 (Ala.1989).’ ” ’
 

 “Gooden v. City of Talladega,
 
 966 So.2d 232, 235 (Ala.2007) (quoting
 
 Prince v. Poole,
 
 935 So.2d 431, 442 (Ala.2006), quoting in turn
 
 Dow v. Alabama Democratic Party,
 
 897 So.2d 1035, 1038-39 (Ala.2004)).”
 

 Ex parte Duncan,
 
 1 So.3d 15, 19 (Ala. 2008).
 

 The elements of a breach-of-con-traet claim are (1) the existence of a contract, (2) a material breach by one of the contracting parties, and (3) damage to the other party as a result of that breach.
 
 Stockton v. CKPD Dev. Co.,
 
 936 So.2d 1065, 1078 (Ala.Civ.App.2005). At least for purposes of the motion for a summary judgment, both parties agree that they
 
 *1115
 
 entered into a contract for the sale of the house. Davis maintains that he is entitled to a summary judgment on the breach-of-contract claim because, he says, the undisputed facts show that Strange breached the contract by failing to tender any monthly payment after September 2002, by failing to ascertain who was preparing the paperwork, and by vacating the house without notice to Davis, thereby preventing Davis from providing Strange the paperwork. Davis contends that he is entitled to a judgment as a matter of law because “[a] party to a contract who has caused a failure of performance by the other party cannot take advantage of that failure.”
 
 Big Thicket Broad. Co. of Alabama v. Santos,
 
 594 So.2d 1241, 1244 (Ala.Civ.App.1991).
 

 Strange, on the other hand, maintains that the circuit court erred in entering a summary judgment on the breach-of-contract claim because, she says, the evidence, when viewed in a light most favorable to Strange, indicates that Davis breached the contract by failing to produce the paperwork, thereby excusing Strange from making further contractual payments. Strange argues that, when the vendor in an installment land-sale contract breaches the contract, the “vendee may rescind the contract upon relinquishing possession of the [property] and may sue for a return of purchase money paid.”
 
 Health Science Prods., Inc. v. Taylor (In re Health Science Prods., Inc.),
 
 183 B.R. 903, 936 n. 45 (Bankr.N.D.Ala.1995) (citing, among other cases,
 
 McAllister v. Altus Bank,
 
 578 So.2d 1266 (Ala.1991), and
 
 Clark v. Wilson,
 
 380 So.2d 810 (Ala.1980)).
 

 We agree with Strange. The undisputed evidence indicates that Davis assumed the sole responsibility for acquiring the paperwork memorializing the parties’ transaction. According to the affidavit testimony of Strange and Wilson, which Davis did not refute, Davis agreed to deliver the necessary paperwork to Strange within a few days of the parties’ entering into the oral agreement. Davis did not, however, physically deliver the paperwork to Strange. The evidence is conflicting regarding whether Davis contacted Strange to direct her to his attorney’s office to review the paperwork prepared by the attorney’s secretary. Davis says he did; Strange says he did not. According to Strange, Davis merely informed her that the paperwork was being prepared by his attorney, whom Davis did not identify, and that his attorney had not completed the paperwork. Even if Strange had some duty to ascertain the identity of the attorney, according to the evidence presented by Strange she had no reason to visit that attorney who, to her knowledge, had not completed the paperwork. Accordingly, a fair-minded person in the exercise of impartial judgment could determine that Strange had done nothing to prevent the completion and delivery of the paperwork. At the very least, a genuine issue of material fact exists as to whether Davis initially breached the contract, thereby excusing any further performance by Strange. We therefore reverse the summary judgment insofar as it pertains to the breach-of-contract claim.
 

 In her complaint, Strange premised her fraud claim on the misrepresentation by Davis that he would deliver to Strange the paperwork regarding the oral agreement. In other words, Strange asserts that Davis committed promissory fraud by promising to perform a future act with no present intention to do so.
 
 See Valley Props., Inc. v. Strahan,
 
 565 So.2d 571, 579 (Ala.1990) (“If the fraud is based upon a promise to perform or abstain from performing in the future, two ... elements [in addition to elements of a ‘traditional’ fraud claim] must be proved: (1) the de
 
 *1116
 
 fendant’s intention, at the time of the alleged misrepresentation, not to do the act promised, coupled with (2) an intent to deceive”), overruled on other grounds,
 
 White Sands Group, L.L.C. v. PRS II, LLC,
 
 32 So.3d 5 (Ala.2009).
 

 ‘“The burden is on the plaintiff to prove that when the promise was made the defendant intended to deceive.
 
 Martin v. American Medical Int'l Inc.,
 
 516 So.2d 640 (Ala.1987);
 
 P & S Bus., Inc. v. South Cent. Bell Tel. Co.,
 
 466 So.2d 928 (Ala.1985). The plaintiff cannot meet his burden merely by showing that the alleged promise ultimately was not kept; otherwise, any breach of contract would constitute a fraud.
 
 Purcell Co. v. Spriggs Enterprises, Inc.,
 
 431 So.2d 515, 519 (Ala.1983). It is well settled that “a jury does not have untrammeled discretion to speculate upon the existence of [the requisite] intent [for promissory fraud].” There must be substantial evidence of a fraudulent intent that existed when the promise was made.
 
 Martin,
 
 516 So.2d at 642 (quoting
 
 Purcell Co.,
 
 431 So.2d at 519).’
 

 “Goodyear Tire & Rubber Co. v. Washington,
 
 719 So.2d 774, 776 (Ala.1998). See also
 
 Trum v. Melvin Pierce Marine Coating, Inc.,
 
 562 So.2d 235, 237 (Ala. 1990) (‘[I]n order for a promise to constitute a fraudulent misrepresentation, there must have been at the time the promise was made an intention not to perform, and such a promise must have been made with the intent to deceive.’);
 
 Clanton v. Bains Oil Co.,
 
 417 So.2d 149, 151 (Ala.1982) (‘A promise, to constitute fraud, must be made with the intent not to perform it.’). Evidence of consistent, but unfulfilled, promises can in some cases amount to substantial evidence of an intent to deceive.
 
 Goodyear Tire,
 
 719 So.2d at 777;
 
 Campbell v. Naman’s Catering, Inc., 842
 
 So.2d 654,
 
 659 (Ala.
 
 2002). Additionally, ‘[a] defendant’s intent to deceive can
 
 be
 
 established through circumstantial evidence that relates to events that occurred after the alleged misrepresentations were made.’
 
 Byrd v. Lamar,
 
 846 So.2d 334, 343 (Ala. 2002).”
 

 Southland Bank v. A & A Drywall Supply Co.,
 
 21 So.3d 1196, 1212 (Ala.2008).
 

 Strange contends that Davis always intended to maintain the contract as an oral agreement so that he could claim the parties had agreed only to a lease-purchase arrangement that would allow him to retain the $4,000 down payment in the event of a default. The evidence, when viewed in a light most favorable to Strange, could convince a reasonable person, in the exercise of impartial judgment, of the correctness of that theory. Davis was aware that, when he and Strange consummated the sale in May 2002, Strange had credit problems that made her more likely to default on an installment loan. Armed with that knowledge, Davis dictated the terms of the transaction to his attorney’s secretary, and, based largely on Davis’s word, the secretary labeled the document as a lease-purchase and characterized the $4,000 down payment in the document as a “non-refundable purchase option payment,” which is contrary to the terms negotiated by Strange and Davis. According to Strange, Davis then took every action he could to assure that the document drafted by his attorney’s secretary remained the sole written evidence of the agreement. Based on Strange’s testimony, Davis did not disclose the existence of the document to Strange, did not deliver the document to her, did not advise her of the identity of the attorney drafting the document, and did not direct her to the attorney’s office to review it. To the contrary, Davis continually maintained for
 
 *1117
 
 four and one-half months that the paperwork was still in the process of being prepared and that he would contact Strange when it was ready. Even when Strange informed Davis that she was not paying the October payment because of his failure to provide her the paperwork, Davis did not provide Strange the document that Davis testified remained in the attorney’s office. Davis then actually retained the $4,000 down payment based on the allegedly false claim that he had used it to replace the carpet in the house when, instead, he had merely had the carpet cleaned at a cost of $50 or $100. We therefore reverse the summary judgment on the fraud claim.
 

 In the third count of her complaint, Strange claimed that Davis had harassed her, thereby interfering with her peaceable and quiet enjoyment of the house she was purchasing from him. In her deposition, Strange testified that Davis harassed her when, on two separate occasions, he spoke with Strange’s daughter to demand the October payment. In his motion for a summary judgment, Davis pointed out that mere efforts to collect a debt in a reasonable manner without more cannot be considered actionable.
 
 Liberty Loan Corp. of Gadsden v. Mizell,
 
 410 So.2d 45, 47-48 (Ala.1982). We agree. Strange has not introduced any evidence indicating that Davis acted in such a manner as to warrant the conclusion that he committed any actionable conduct in merely attempting to collect the October payment. We therefore affirm the summary judgment as to the harassment claim.
 

 In count four of the complaint, Strange alleged that Davis had entered into a course of conduct to evict or to force Strange to vacate the house without lawful authority. In her deposition, Strange admitted that she had not actually been evicted or forced to vacate the house by Davis’s actions. Rather, Strange explained that she had felt compelled to vacate the house after Davis failed to deliver the paperwork to her and because she believed she would be out the money she had paid instead of gaining title to the house. In his summary-judgment motion, Davis argued that Strange had elected to vacate the house of her own free will and that Davis had had nothing to do with her decision. Davis maintained that he was therefore entitled to a judgment as a matter of law on Strange’s claim that Davis had wrongfully evicted her.
 

 “ When reviewing an excerpt of deposition testimony to determine whether it creates a genuine issue of material fact, this court does not consider it abstractly, independently, and separately from the balance of the deposition testimony.
 
 See Malone v. Daugherty,
 
 453 So.2d 721 (Ala.1984). Rather, this court must consider the context of the testimony as well as the remainder of the deposition testimony in order to determine if the testimony as a whole creates a reasonable inference to support the proponent’s position.
 
 See Hines v. Armbrester, 477
 
 So.2d 302 (Ala.1985); and
 
 Alabama Power Co. v. Smith,
 
 409 So.2d 760 (Ala.1982).”
 

 McGough v. G & A, Inc.,
 
 999 So.2d 898, 905-06 (Ala.Civ.App.2007). Viewing the entirety of the deposition testimony on the subject, it appears that Strange enjoyed the house and would still be living in the house had it not been for the failure of Davis to provide her the paperwork securing her legal claim to the house. Strange stated that she had not wanted to vacate the house but that she had felt that it was best to vacate the house to prevent the loss of further funds to Davis who, by that time, she believed had defrauded her. A fair reading of the deposition testimony simply does not support the inference that
 
 *1118
 
 Strange vacated the house of her own volition and not due to the actions or omissions of Davis. As such, Davis did not carry his burden of demonstrating that there was no genuine issue of material fact that Strange had independently and voluntarily vacated the house.
 
 See Lee v. City of Gadsden, 592
 
 So.2d 1036, 1038 (Ala.1992) (“The party moving for a summary judgment must make a prima facie showing that there are no genuine issues of material fact and that he is entitled to a judgment as a matter of law.”).
 

 In its order granting Davis’s summary-judgment motion, the circuit court stated:
 

 “The law is clear that a non-moving party may not create a genuine issue of fact by submitting affidavits or testimony that contradicts her own earlier sworn testimony.
 
 McAlpin v. City of Decatur,
 
 628 So.2d 611, 613 (Ala.1993);
 
 Tittle v. Alabama Power Co.,
 
 570 So.2d 601, 604 (Ala.1990).”
 

 We agree with that statement as a general proposition of law, but we find it inapplicable to the facts of this case. With one exception, Strange’s affidavit testimony does not contradict her deposition testimony; rather, it merely elaborates or supplements her deposition testimony. The lone exception we have discerned concerns Strange’s statement in her affidavit that Davis informed her that his attorney’s wife had had a baby, which contradicts Strange’s deposition testimony that Davis did not explain the attorney’s alleged delay in drafting the paperwork. However, that contradiction is immaterial and does not render the remainder of the affidavit inadmissible. Therefore, we find no basis for affirming the summary judgment on the theory that Strange impermissibly attempted to create a genuine issue of material fact through the filing of a sham affidavit.
 

 For the foregoing reasons, we affirm the summary judgment as to the harassment claim; we reverse the summary judgment as to the breach-of-contract, fraud, and wrongful-eviction claims, and we remand the case to the circuit court for further proceedings consistent with this opinion.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
 

 BRYAN, J., concurs in the result, without writing.
 

 [1]
 

 . In his deposition, Davis recalled the transaction somewhat differently, but, for purposes of the motion for a summary judgment, Davis admitted that ''[t]he parties believed that Ms. Strange was purchasing the house for $35,000 with the balance financed by Mr. Davis at a monthly rate to be determined by an amortization schedule."
 

 [2]
 

 . At one point in his deposition, Davis denied that Wilson was the man who made the tender; however, Wilson attested that he was the only man attending the meeting with Strange, and Davis testified at another point that Wilson must have been the man.
 

 [3]
 

 .Strange testified that Wilson loaned her a portion of the $4,000 and that she paid him back various amounts until Wilson informed her that she no longer owed him any money. Strange stated that she believed that she had reimbursed Wilson in full but that she did not know whether she had paid back "every dime” of the loan.
 

 [4]
 

 . Strange testified that, at the time the parties entered into the oral agreement, Strange informed Davis that she could not afford monthly payments above $400. At some point, Davis informed Strange that the monthly payments would be $369 for between “12 and 15 years.” Apparently, the amount was based on a 12% interest rate.
 

 [5]
 

 . In her deposition, Strange testified that Davis did not elaborate on the matter, but, in her affidavit, Strange attested that Davis had said that the attorney was behind on his work because the attorney’s wife had had a baby.
 

 [6]
 

 . According to Strange's daughter, Strange's sister, who was very ill, was staying with Strange at the time.