John Phillip Williams appeals from a summary judgment for A.L. Williams Associates, Inc. ("ALW"). We affirm.
Williams originally filed suit in 1984 against ALW and William Worthington, an ALW regional vice president, because of injuries he sustained when Worthington assaulted him. Williams amended the complaint to include claims based on negligence, wanton misconduct, outrageous conduct, and interference with business relations. The amendment also included a claim by Williams's wife based on loss of consortium. Following a trial, the jury returned a general verdict in favor of Williams in the amount of $500,000, and in favor of Mrs. Williams for $1,000 on her loss of consortium claim. The jury denied the Williamses' claims directly against Worthington, and denied ALW's cross-claim against Worthington. Williams allowed the verdict in favor of Worthington to become final, but ALW appealed from the judgment in the Williamses' favor, based upon the inconsistency in the jury verdicts. This Court held that the irreconcilable verdicts indicated confusion on the part of the jury, and reversed and remanded for a new trial. A.L. Williams Associates v. Williams, 517 So.2d 596 (Ala. 1987).
On remand, Williams amended the complaint and pursued three claims against ALW: tortious interference with business relations; libel; and outrageous conduct. ALW filed a motion for summary judgment and filed supporting affidavits and deposition testimony. After reviewing the materials submitted and the briefs and arguments of the parties, the trial court granted the summary judgment motion. This appeal followed.
Many of the relevant facts were set forth in the earlier opinion, so we repeat from that opinion only those facts necessary to an understanding of the case, and we add the relevant facts that were developed on remand. ALW is a corporation with a multi-level marketing plan to sell insurance and securities. ALW is the general agent for Massachusetts Indemnity and Life Insurance Company ("MILICO") and supplies all of MILICO's sales agents. MILICO policies can be sold only by agents who also have contracts with ALW. ALW agents sign contracts with MILICO which provide that, during the term of the agreement, the agents will not directly or indirectly induce or attempt to induce any MILICO policyholders to terminate or to replace any MILICO policies or otherwise disturb the relationship between MILICO and its policyholders. The contracts also provide that the agents will not induce or attempt to induce any of MILICO's agents or employees either to terminate their relationship with MILICO or ALW or to associate in any other insurance business during the first year following the termination of the individual's association with MILICO. Finally, the terms of the MILICO contract state that the arrangement may be terminated with or without cause by either party and that ALW has the express right to notify MILICO to terminate the contract.
ALW owns a subsidiary, First American National Securities, Inc. ("FANS"), a broker-dealer regulated by the National Association of Securities Dealers ("NASD"). Some ALW/MILICO agents are also licensed to sell securities for FANS, and FANS sells its securities exclusively through those agents.
Williams signed contracts with ALW and MILICO in 1982 and with FANS in 1983. When he applied to become a FANS representative, Williams signed a document indicating his understanding that, as a FANS agent, he could not sell securities for another broker. Williams performed well at ALW and was promoted twice during 1983. On December 1, 1983, Williams's supervisor — ALW regional vice president William Worthington — called Williams into the supervisor's office. Shortly thereafter, the men engaged in a skirmish, the precise cause of which is unclear, and Williams suffered severe injuries. Several days after the altercation, Williams returned to his office and removed cards with clients' names and telephone numbers.
On January 18, 1984, Williams and his father went to the ALW offices in Atlanta *Page 123 
to discuss the beating and any actions ALW intended to take. Williams spoke with Bob Buisson, an officer with ALW, but when he began to talk about the beating, Williams was told to leave Buisson's office and to contact ALW's attorneys if he had anything else to say. ALW terminated Williams's employment on March 19, 1984.
Beginning in January 1984, Williams became licensed with at least one other insurance company and, before he was terminated by ALW, he encouraged numerous MILICO policyholders to terminate their MILICO policies and to purchase coverage from another company. Williams admitted that in January or February 1984 he encouraged several MILICO agents to leave MILICO's employ and to work for another company.
On February 7, 1984, Worthington sent a MILICO termination form and a letter to Buisson at the Atlanta office, requesting Williams's immediate termination. In the letter, Worthington referred to Williams as "the asshole we've been discussing," and claimed that Williams was "badmouthing" ALW and recruiting its agents. Buisson, who is also an officer, director, and principal of FANS, sent the letter and termination form to four people: Kevin King, the corporate attorney for FANS and ALW; John Smithson, an ALW senior vice president; Barry Clause, a compliance officer at FANS; and Douglas Hartline, the president of FANS. MILICO and FANS terminated the contracts they had with Williams. Williams's securities registration with NASD was also terminated.
As noted earlier, Williams filed suit against Worthington and ALW, and, after a jury trial, Williams did not appeal from the judgment in favor of Worthington. On remand from this Court, Williams pursued a claim against ALW based on an alleged tortious interference with business relations; in that claim he alleged that ALW had caused him to be terminated from his employment with FANS and MILICO. On May 26, 1988, Williams amended the complaint to include a claim based on libel, alleging that Buisson had published Worthington's February 7, 1984, letter by distributing copies of it to individuals inside and outside of the ALW corporate structure. On June 7, 1988, Williams amended the complaint to include a claim based on the tort of outrage, alleging that ALW's agents had libeled him, had caused his business relations to be terminated, and had generally engaged in conduct designed to harass him and cause him severe mental anguish. After discovery was completed, the trial court granted ALW's motion for summary judgment as to all three counts of the complaint.
On the tortious interference with business relations claim, the trial court found that Williams was aware of the relationship between ALW, FANS, and MILICO, and that he had acknowledged that he had known since 1982 that he could not market MILICO or FANS products unless he was affiliated with ALW. Accordingly, the court held that ALW was not a stranger to Williams's business relations with FANS and MILICO, and that ALW's actions were within its contractual rights.
On appeal, Williams argues that summary judgment was improperly entered on the tortious interference claim because ALW was not a party to Williams's contracts with MILICO and FANS, and because, he argues, the question of whether ALW's interference was justified can be decided only by a jury. We disagree. Summary judgment is properly entered when, after reviewing the evidence in the record in the light most favorable to the nonmoving party, the court concludes that there exists no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law. See Rule 56(c), Ala.R.Civ.P.
Alabama recognizes a cause of action for intentional interference with business or contractual relationships; that cause of action requires proof of four elements: 1) the existence of a contract or business relation; 2) defendant's knowledge of the contract or business relation; 3) defendant's intentional interference with the contract or business relation; and 4) damage to the plaintiff as a result of the defendant's interference. Lowder Realty, *Page 124 Inc. v. Odum, 495 So.2d 23 (Ala. 1986). After noting that a party to a relation cannot be held liable for interference with that relation, citing Harrell v. Reynolds Metals Co.,495 So.2d 1381, 1388 (Ala. 1986), ALW argued, and the trial court found, that ALW was a party to the business relations at issue here. We agree.
Williams has repeatedly acknowledged the intertwining of the relationships between ALW, MILICO, and FANS. He admitted that the contract he signed with MILICO expressly provided that ALW could notify MILICO to terminate his contract. He further testified on numerous occasions that he was aware that he could sell MILICO and FANS products only if he was affiliated with ALW. Williams's assertion that ALW was not a party to his contracts with MILICO and FANS is correct but irrelevant here, because a party to a "business relation" cannot be held liable for interference with that relation. Harrell v. Reynolds MetalsCo., 495 So.2d 1381, 1388 (Ala. 1986). Given the unique relationship among these three corporate entities, and the centrality of ALW's involvement in the marketing scheme and Williams's contracts with FANS and MILICO, we can conclude only that ALW was a party to Williams's business relations with MILICO and FANS. Williams asserts that Creel v. Davis,544 So.2d 145 (Ala. 1989), mandates a different result. We disagree, because the facts in Creel are distinguishable from those in this case. ALW was an essential entity in Williams's relationship with MILICO and FANS because, without an affiliation with ALW, an agent can not sell for either MILICO or FANS. The corporate structure and contractual relations inCreel did not present a similar situation. Accordingly, ALW's status as a party to the business relationships involved here cannot be questioned. Therefore, the trial court did not err when it granted ALW's motion for summary judgment as to the claim for tortious interference.
Williams next contends that the court erred in entering summary judgment on the libel claim because, he argues, ALW published Worthington's libelous letter outside the ALW corporate structure and because, he says, the libel issue must be resolved by a jury. ALW argues that the trial court ruled correctly because, it says, the letter was distributed only within the ALW and FANS corporate structure and, therefore, was not "published" for purposes of a libel claim. The parties and the trial court agreed that Georgia substantive law governs the libel claim because the place of the wrong is where the defamatory statement is communicated, and that the law of that place generally controls the claim. Restatement (Second) ofConflicts § 149 (1971).[1]
Georgia law provides that libel is a false and malicious defamation of another that tends to injure that person's reputation. Ga. Code Ann. § 51-5-1(a) (1982). Proof of publication of the libelous matter is essential to a recovery under the statute. Ga. Code Ann. § 51-5-1(b) (1982). Georgia cases hold that intracorporate communications do not constitute publication. E.g., Jackson v. Douglas County ElectricMembership Corp., 150 Ga. App. 523, 258 S.E.2d 152 (1979). Based upon these legal principles, we conclude that summary judgment was correctly entered as to this claim.
After careful consideration of the record, we find that the trial court properly determined that the allegedly defamatory letter was not published outside the corporate structure. Worthington's letter to Bob Buisson, ALW's national sales director and FANS officer, alleged that Williams was "badmouthing" the company, recruiting ALW agents, and telling people that Buisson and the president of ALW were not paying agents the money they had earned. Buisson stated that he wrote a cover letter and sent it, along with Worthington's letter, to the attorney for FANS and ALW; to a senior vice president at ALW, who investigated the allegations; and to two officers at FANS who were responsible for seeing *Page 125 
that FANS agents complied with securities laws.
Williams was an agent of both FANS and ALW, and the allegations in the letter involved matters relating to ALW and FANS. As previously noted, ALW was an indispensable entity in FANS's corporate structure, because FANS is owned by ALW and receives all of its agents from ALW. The communication was made only to those who had reason to receive the information, which concerned possible violations of company rules and related to their duties to ALW and FANS. See Carter v. WillowrunCondominium Ass'n, Inc., 179 Ga. App. 257, 345 S.E.2d 924
(1986) (letter about tenant written by condominium association attorney, at behest of association's president, and mailed to member of association did not constitute publication). Accordingly, applying the relevant Georgia law, we hold that there was no actionable libel in this case and that the summary judgment was proper on this claim.
As an aside, we note that it is well established under Georgia law that a defendant corporation is not liable for defamatory statements of an agent acting within the scope of his employment, unless it affirmatively appears that the agent was either authorized or directed to defame the plaintiff.Chambers v. Gap Stores, Inc., 180 Ga. App. 233, 348 S.E.2d 592
(1986). Even viewing the evidence in the light most favorable to Williams, we find nothing that suggests that the allegedly libelous letter was transmitted with ALW's approval or at its direction. Thus, there is further support for the summary judgment in favor of ALW.
Finally, Williams urges this Court to reverse ALW's summary judgment on his outrage claim, because, he argues, the facts reveal that ALW's agents carried on a pattern of outrageous conduct, which included transmitting a letter that referred to him as an "asshole," demanding that he and his father leave ALW offices, and discharging him from his employment. ALW argues that Williams's allegations and evidence fall short of that necessary to support a claim of outrage. We agree.
To be actionable under the tort of outrage, the conduct involved must be "so outrageous in character and extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." American Road Service Co. v. Inmon, 394 So.2d 361
(Ala. 1980); McIsaac v. WZEW-FM Corp., 495 So.2d 649 (Ala. 1986). Williams's allegations and the evidence he presented do not support a cause of action for outrage. The actions of which he complains are little more than a restatement of his claims for libel and tortious interference with business relations. There is no evidence that ALW intended to cause Williams severe emotional distress, and, finally, there is no evidence that Williams suffered severe emotional distress. It is thus not necessary to consider whether the acts alleged would in themselves be considered "atrocious and utterly intolerable in a civilized society." The trial court correctly entered summary judgment on this claim.
For the foregoing reasons, we hold that the trial court did not err in entering summary judgment on the claims for interference with business relations, libel, and outrageous conduct. The judgment of the trial court is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and JONES, HOUSTON and KENNEDY, JJ., concur.
[1] The parties stipulated that Georgia law applied to the libel claim, but neither party asserted that Georgia law applied to the remaining claims.