The plaintiff, Tracy Lankford, as administratrix of the estate of her deceased husband, Arthur Lankford, appeals from a summary judgment entered in favor of Gulf Lumber Company ("Gulf"), Stimpson Forestry Products, Inc. ("Stimpson"), International Paper Company, and International Paper Limited Partnership, Inc. We affirm.
The issue is whether Lankford submitted substantial evidence that any of these four defendants reserved the right to control the individual who caused the vehicular accident in which Lankford's husband was killed.
Lankford filed a wrongful death action as a result of her husband's death in an automobile accident. She named as defendants Johnny MacWeaver, the driver of the logging truck that collided with the car in which her husband was a passenger, and Oscar Rivers, Earlene Rivers, and Rivers Tree Service, alleged employers of MacWeaver.[1] Lankford amended her complaint to add the four corporate defendants named above. There are inconsistencies within the record as to the respective activities of the two International Paper defendants, but it appears that one of them owned the tract of land where the timber was being cut and that one of them was sending foresters to the land to inspect the *Page 1342 
cutting. The timber cutting agreement showed the contracting parties to be Gulf and International Paper Timberlands Operating Company, Limited; however, Lankford misnamed this party in her complaint as International Paper Limited Partnership, Inc. There was no issue made of this discrepancy and, because this case does not turn on the distinction between the two International Paper defendants, we will treat them as one defendant and refer to them collectively as "IPCo."
When the accident occurred, Rivers was cutting timber on a tract of land owned by IPCo. This timber was being cut pursuant to a timber cutting agreement between IPCo and Gulf. Gulf operated a timber and pulpwood business, purchasing logs that it then cut into timber or resold to paper mills for use as pulpwood. Gulf owned the right to cut and remove certain timber and wood products on land owned by IPCo. Independent loggers and other companies performed the cutting and hauling of the logs and pulpwood purchased by Gulf.
Stimpson is a corporation engaged in the forestry business, and it contracts with loggers to cut and haul timber. Stimpson had a contract with Gulf to cut the timber that Gulf had purchased from IPCo. Rivers had a written contract with Stimpson to cut, load, and haul logs and pulpwood to designated places, including facilities owned by IPCo, Gulf, and Scott Paper Company. The contract, provided, in part:
 "THIS AGREEMENT made this 12 day of Dec., 1988, by and between STIMPSON FOREST PRODUCTS, INC. (hereinafter called 'Contractor') and Cleve Rivers (hereinafter called 'Sub-Contractor'):
 ". . . Gulf Lumber Company (hereinafter called 'Owner') owns the right to cut and remove certain timber and wood products . . . under agreement with Int'l. Paper Co. (Landowner) . . . and Contractor has an agreement with the Owner for the logging of such timber and wood products, the terms and provisions of each of which agreements have been made known to Sub-Contractor; and Sub-Contractor desires to sub-contract, as an independent logging contractor the logging of that portion of such timber and wood products . . . (3) to provide, at his sole risk and expense, all personnel and workmen with all necessary vehicles, machinery, tools and equipment used in and about the performance of this contract; and that all personnel and workmen shall be exclusively his employees, and shall in no way be subject to the control, direction or supervision of the Contractor [Stimpson] or the Owner or any representative of either, as to the means, manner or agencies by or through which the work is performed; . . . (5) to indemnify and save harmless the Contractor and the Owner and their respective agents, servants and employees, from any and all claims, actions and causes of action, for loss, damage, injury or death resulting from or in any way connected with operations in performing this contract, whether or not based on the negligence or alleged negligence of Contractor or Owner, or their respective agents, servants or employees."
MacWeaver was one of Rivers's 10 employees and was driving Rivers's logging truck when the collision occurred that killed Lankford's husband. The trial court entered a summary judgment in favor of IPCo, Gulf, and Stimpson and made the judgment final pursuant to Rule 54(b), Ala.R.Civ.P.
The dispositive issue before this Court is whether Rivers was an independent contractor (if so, the summary judgment was proper), or whether a question of fact was presented as to whether IPCo, Gulf, or Stimpson had reserved the right to control Rivers and his employees, including MacWeaver.
A summary judgment is appropriate upon a showing that no genuine issue of material fact exists and that the moving party is entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P. In reviewing a summary judgment, this Court will view the evidence in the light most favorable to the nonmovant and will resolve all reasonable doubts against the movant. *Page 1343 Fincher v. Robinson Brothers Lincoln-Mercury, Inc.,583 So.2d 256 (Ala. 1991). Because this action was filed after June 11, 1987, the "substantial evidence" rule is the applicable standard of review. Ala. Code 1975, § 12-21-12.
 "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved."
West v. Founders Life Assurance Co. of Florida, 547 So.2d 870,871 (Ala. 1989).
Lankford argues on appeal that the summary judgment for the corporate defendants was improper because, she says, she produced sufficient evidence to show a question of fact as to whether they reserved the right of control over Rivers. If these defendants did reserve the right of control over Rivers, they could be liable to Lankford for the acts of Rivers and his employees under the doctrine of respondeat superior. SeeWilliams v. Tennessee River Pulp Paper Co., 442 So.2d 20
(Ala. 1983).
The test used in cases such as this to determine if a defendant may be held liable under respondeat superior or whether the alleged tort-feasor was an independent contractor, is whether the alleged employer has reserved the right of control over the means by which the work is done; the test is not the actual exercise of such control. See Danford v. Arnold,582 So.2d 545 (Ala. 1991); Pugh v. Butler Telephone Co.,512 So.2d 1317 (Ala. 1987); Sessions Co. v. Turner, 493 So.2d 1387
(Ala. 1986); Sawyer v. Chevron U.S.A., Inc., 421 So.2d 1263
(Ala. 1982). In other words, the defendant must have reserved the right to direct not only what shall be done, but also how it shall be done. Solmica of the Gulf Coast, Inc. v.Braggs, 285 Ala. 396, 232 So.2d 638 (1970).
 "[T]he mere retention of the right to supervise or inspect the work of an independent contractor as the work progresses to ensure compliance with the terms of an agreement does not operate to create a master-servant relationship. There must be a retention of control over the manner in which the work is done, before an agency relationship is created."
Pugh v. Butler Telephone Co., supra, at 1318.
Applying these rules to each defendant now before us, we conclude that the evidence, when viewed in the light most favorable to Lankford, does not support Lankford's contention that IPCo, Gulf, or Stimpson reserved any right to control the means by which Rivers completed his work.
With regard to the relationship between Rivers and IPCo, the owner of the land on which Rivers was cutting timber, the record shows only that IPCo sent foresters to the area being cut to inspect and make sure that the timber was cut in compliance with the timber cutting agreement between IPCo and Gulf. The forester would look to see if the stumps left were the correct height, if trash was removed, if the right trees were being cut, if the roads and any structures damaged by the logging operations were repaired, and if the roads, property lines, streams, and drainage ditches were clear of all logs, timber, limbs, and debris. If the IPCo forester found a problem, he would contact Gulf or Stimpson and Gulf or Stimpson in turn would inform Rivers of the problem.
The right to control the means by which the work of a purported independent contractor is done was not established by showing that IPCo retained the right to supervise or inspect the job site to make sure that Gulf and Rivers were performing in conformity with the contract. See Danford, supra. IPCo did not tell Rivers how to cut the trees, how to load his truck, or how to haul the wood. IPCo also did not supply Rivers with any trucks, equipment, or fuel to use in the removal of the timber. IPCo did not have any say as to how much wood Rivers cut, how many days a week he worked, or how many hours he worked each day.
Although IPCo had a wood supply agreement with Stimpson and Rivers did deliver pulpwood to IPCo, IPCo did not issue any checks to Rivers. Rivers's delivery of pulpwood to IPCo does not indicate that IPCo retained any right of control over the *Page 1344 
manner in which Rivers completed his work. Lankford argues that this evidence was sufficient to indicate a reserved right of control and to create a question of fact for the jury. While this Court recognizes that whether a defendant reserved the right of control is generally a question of fact to be decided by the jury if the evidence is in dispute, the evidence in this case had no tendency to show that IPCo retained or exercised any control over the method by which Rivers cut and removed the timber. See Cordes v. Wooten, 476 So.2d 89, 91 (Ala. 1985). Therefore, the summary judgment was proper as to IPCo, because the evidence showed only that Rivers was an independent contractor.
Next, we consider the relationship between Rivers and Gulf and that between Rivers and Stimpson. Although Gulf and Stimpson are separate companies, they have the same president, are closely related, and have intertwined involvement in this case; therefore, the facts regarding their relationships with Rivers can best be discussed together.
Rivers had been cutting and hauling timber for Stimpson for approximately three and one-half years. Rivers testified that all the timber he had cut in that time was delivered to Gulf. The pulpwood was delivered to one of three places designated in the contract — IPCo's mills in Moss Point, Mississippi, and in Mobile, Alabama, or Scott Paper Company's mill at a location not disclosed in the record. Stimpson decided where to send the pulpwood, depending on where Gulf could get the best price, where the pulpwood was needed, and whether any mills were "blocked out" and unable to receive the pulpwood. When Rivers delivered pulpwood to IPCo, he would get a load ticket and take it to Stimpson, and Stimpson would pay him at the agreed-upon rate.
Rivers was paid once a week by Stimpson, according to the amount of wood he hauled. Stimpson did not deduct Social Security or withholding taxes; however, it did withhold a dollar amount per cord of wood for workmen's compensation insurance on Rivers and his employees. Rivers also had a reserve account with Stimpson. Stimpson would withhold a certain amount of money from Rivers's pay, and the money was available any time Rivers needed equipment, fuel, or cash. The arrangement was optional and was worked out between Rivers and Stimpson's forester, Mr. Brislin. Rivers had access to the account at all times and could request that the entire reserve account be paid over to him and could request that nothing be withheld on any particular week.
The record indicates that in March 1985, when Rivers first contracted with Stimpson, Gulf purchased a set of tires for Rivers and that Rivers did not reimburse Gulf. Rivers testified that he was not asked, or expected, to reimburse Gulf.
Stimpson also sent a forester out to inspect the job site; that forester looked at many of the same things IPCo's forester looked at. The forester would make sure that Rivers was cutting the right trees, leaving the stumps the correct height, maintaining the road system, and cleaning up trash and debris.
Rivers had no set work days or hours and was not required to report to Stimpson or Gulf at any particular time. Rivers furnished his own trucks and equipment and was responsible for paying for his own fuel and maintenance costs. He was responsible for hiring, firing, and paying his employees. Both Stimpson and Rivers had the right to terminate their agreement on seven days' notice to the other.
This evidence does not tend to show that either Gulf or Stimpson exercised actual control or reserved the right to control the manner in which Rivers did his work. InWilliams v. Tennessee River Pulp Paper Co., 442 So.2d 20
(Ala. 1983), a case factually similar to the present case, the plaintiff brought a wrongful death action against Tennessee River Pulp and Paper Company ("Tennessee Paper"), alleging that an employee of a logger performing work for Tennessee Paper had negligently caused the death of the plaintiff's decedent. The issue was whether the logger was an independent contractor; if so, then Tennessee Paper's summary judgment was proper. *Page 1345 
This Court in Williams affirmed the summary judgment in favor of Tennessee Paper, noting that the logger used his own truck and his own equipment, chose his own working hours, and was responsible for hiring and firing his own employees. Also, Tennessee Paper deducted contractor liability insurance and workmen's compensation premiums from the logger's pay and inspected the work site to supervise conformity with the contract requirements. This Court held that the evidence conclusively established that the logger was an independent contractor and, therefore, that Tennessee Paper was not liable under respondeat superior for the negligence of the logger's employee.
The facts in Williams and those in this appeal are very similar. Rivers, like the logger in Williams, used his own equipment, chose his own hours, and was in charge of hiring, firing, and paying his own employees. Stimpson deducted workmen's compensation premiums from Rivers's payments and employed a forester who inspected the job site to make sure that Rivers was complying with the contract. Although the payment of workmen's compensation premiums would ordinarily indicate an employment relationship, under the circumstances presented here it is clear that Stimpson undertook those payments only as an administrative convenience to Rivers. SeeWilliams, supra, at 23.
Lankford argues that, because Gulf purchased tires for Rivers when he first contracted with Stimpson, Rivers was an employee of Gulf and not an independent contractor. This fact does not tend to establish an employment relationship between Rivers and Gulf; at most, it can be viewed as a bonus or a gift at the outset of the contract to help Rivers get started. After receiving that set of tires, Rivers purchased and maintained all of his trucks and equipment.
Lankford also argues that the reserve account set up between Rivers and Stimpson made Rivers an employee of Stimpson. The record indicates that this was an optional arrangement and was for Rivers's benefit in case he ever needed money. The account does not show any retention or exercise of control by Stimpson over the manner in which Rivers did his work. It was, in effect, an informal banking relationship ancillary to the contract between Rivers and Stimpson.
Because Lankford presented no substantial evidence to show that Gulf or Stimpson exercised any control or retained any right to control the manner in which Rivers performed his work, the summary judgment was also proper as to Gulf and Stimpson.
For the reasons stated, the summary judgment for IPCo, Gulf, and Stimpson is affirmed.
AFFIRMED.
MADDOX, SHORES, ADAMS, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.
[1] It appears that Rivers Tree Service is a sole proprietorship owned only by Oscar Cleve Rivers, and that Earlene Rivers was named as a defendant only because she is his wife. Therefore, we shall refer only to Oscar Rivers as the party involved in this case.