786 So.2d 501 (2000)
Joel COBB
v.
UNION CAMP CORPORATION.
2981432.
Court of Civil Appeals of Alabama.
May 19, 2000.
Rehearing Applications Denied July 28, 2000.
Certiorari Denied November 22, 2000[*].
*502 William S. Hereford of Burr & Forman, L.L.P., Birmingham; and P. Richard Hartley of Hartley & Hickman, Greenville, for appellant.
James A. Byram, Jr., Donald R. Jones, Jr., and Marc J. Ayers of Balch & Bingham, L.L.P., Montgomery, for appellee.
Alabama Supreme Court 1992126.
PER CURIAM.
Joel Cobb sued Evergreen Forest Products, Inc. ("Evergreen"); its president, Lanier Edwards; and its vice-president, Charles Thomas, Jr., on December 19, 1996, alleging various theories of recovery, including breach of contract, fraudulent inducement, fraudulent suppression, and promissory fraud. Cobb also sued Union Camp Corporation, asserting claims of conspiracy and tortious interference with a contractual/business relation. He amended his complaint on October 17, 1997, to allege that Evergreen, Edwards, and Thomas were the agents of Union Camp and that Union Camp was liable to him on the claims he asserted against those other parties, under the theory of respondeat superior.
On November 20, 1997, all of the defendants moved for a summary judgment. On November 26, 1997, Cobb amended his *503 complaint, for a second time, to allege an additional claim of conversion against Evergreen. On March 18, 1998, the court set the pending summary-judgment motions for a hearing on May 7, 1998. On June 12, 1998, following the hearing on the motions, Cobb moved, pursuant to Rule 15(a), Ala. R. Civ. P., for leave to amend his complaint for a third time to allege additional claims of breach of contract and fraud against Evergreen and to allege a claim of fraudulent suppression against Union Camp; the court never ruled upon this motion. On February 9, 1999, the court granted Union Camp's motion for a summary judgment and denied the summary-judgment motions of Evergreen, Edwards, and Thomas. Thereafter, on Cobb's motion, the court, pursuant to Rule 54(b), Ala. R. Civ. P., certified as final its judgment as to Union Camp. Cobb appeals. This case was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala. Code 1975.
Before April 1993, Rocky Creek Logging Company ("Rocky Creek"), a wholly owned subsidiary of Union Camp, had been responsible for harvesting the 240,000 acres of timber owned by Union Camp in and around Butler County known as "Chapman Forest." Rocky Creek both harvested the timber and transported it to the Union Camp mills. In October 1992, Union Camp decided to close Rocky Creek and offer its assets for sale. Edwards received notice of Union Camp's intent to sell Rocky Creek's assets, and he began negotiating with Union Camp. On April 2, 1993, Evergreen purchased Rocky Creek's assets, including its harvesting and hauling equipment. Evergreen's purchase of the assets involved three written contracts.[1] A "Purchase and Sale Agreement" evidenced Evergreen's purchase from Union Camp of the Rocky Creek assets and equipment. A "Memorandum of Agreement" evidenced Union Camp's agreement to provide Evergreen with at least 60,000 tons of "fee wood" to harvest for a term of one year.[2] A "Wood Supplier and Transportation Agreement" evidenced Evergreen's agreement to sell to Union Camp 60,000 tons of "market wood" and to transport 400,000 tons of wood chips and 60,000 tons of other wood products to various locations designated by Union Camp.[3] The contracts stated that Evergreen is an independent contractor and not an employee or agent of Union Camp. Rocky Creek ceased its operations on April 2, 1993, and Evergreen began its operations on April 3, 1993. The transport and accounting divisions of Evergreen moved into the same building that had been occupied by Rocky Creek on Union Camp property and paid no rent for the use of this building. The harvesting and procurement division of Evergreen moved into a separate building that was not located on Union Camp property. A number of the Rocky Creek employees became employees of Evergreen.
Cobb is an independent professional logger who has been in the logging business for a number of years. In early 1993, Edwards, in anticipation of Evergreen's purchase, approached Cobb about forming a new logging crew to harvest for Evergreen. *504 Cobb claims that he and Edwards ultimately reached an agreement whereby Cobb was to form a new logging crew and purchase new equipment to harvest the Union Camp fee wood. Cobb contends that the agreement he reached with Edwards guaranteed the new logging crew the right to harvest at least 30,000 tons of Union Camp fee wood and an equal amount of quality outside market wood each year for a minimum of four years. Cobb also contends that he specifically told Edwards that he would have to receive that amount of wood for that period in order to finance and pay for the new equipment. Cobb seems to contend that his agreement with Edwards, on behalf of Evergreen, was an oral agreement that had never been reduced to writing. Despite the alleged oral agreement with Edwards, Cobb and Evergreen entered into a number of written agreements executed on May 21, 1993, June 14, 1993, and June 21, 1993, which provided for a one-year term and provided that Evergreen could terminate Cobb's services with 20-day written notice. The agreements also state that Cobb is an independent contractor.
In May 1993, Cobb began harvesting Union Camp fee wood, pursuant to the agreement he had reached with Edwards on behalf of Evergreen. Cobb's logging crew continued to harvest Union Camp fee wood until February 1995, when Paul Schrantz, Union Camp's district manager for Chapman Forest, told Tommy Mosley, an Evergreen forester and procurement officer, to stop using Cobb to cut on Union Camp property. Cobb contends that Union Camp wanted to replace him with another logger who had previously worked for Rocky Creek and Union Camp. Union Camp contends that it was not satisfied with the quality of Cobb's logging. Mosley initially gave Cobb other assignments. Thereafter, Cobb ceased working for Evergreen. The evidence is disputed as to whether Cobb voluntarily ceased working for Evergreen or Evergreen ceased giving Cobb assignments altogether.
In reviewing the disposition of a motion for summary judgment, we use the same standard the trial court used in determining whether the evidence before it presented a genuine issue of material fact and whether the movant was entitled to a judgment as a matter of law. Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that no genuine issue of material fact exists, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala.1989). Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). This court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990).
Cobb argues that the court erred in entering a summary judgment in favor of Union Camp on his claims pursuant to the theory of respondeat superior. Our supreme court has stated that the test to be used to determine whether a defendant may be held liable under the doctrine of respondeat superior
"is whether the alleged employer has reserved the right of control over the means by which the work is done; the test is not the actual exercise of such control. In other words, the defendant must have reserved the right to direct *505 not only what shall be done, but also how it shall be done."
Lankford v. Gulf Lumber Co., 597 So.2d 1340, 1343 (Ala.1992) (citations omitted); see also Parr v. Champion Int'l Corp., 667 So.2d 36, 38 (Ala.1995); Wood v. Shell Oil Co., 495 So.2d 1034 (Ala.1986); Williams v. Tennessee River Pulp & Paper Co., 442 So.2d 20 (Ala.1983). We note that our supreme court has held:
"`[T]he mere retention of the right to supervise or inspect the work of an independent contractor as the work progresses to ensure compliance with the terms of an agreement does not operate to create a master-servant relationship. There must be a retention of control over the manner in which the work is done, before an agency relationship is created.'"
Lankford, 597 So.2d at 1343, quoting Pugh v. Butler Tel. Co., 512 So.2d 1317, 1318 (Ala.1987); see also Parr, 667 So.2d at 36; Williams, 442 So.2d at 21. When the evidence is disputed, the question whether there has been a reservation of control is for the trier of fact. City of Birmingham v. Benson, 631 So.2d 902 (Ala.1993).
In support of his argument that the trial court erred in entering a summary judgment on his claims pursuant to the theory of respondeat superior, Cobb contends that he presented evidence tending to prove that Union Camp controlled the manner in which Evergreen and its loggers worked. The evidence is undisputed that Evergreen's agreements with Union Camp identified Evergreen as an independent contractor and that the agreements that Cobb executed with Evergreen identified Cobb as an independent contractor. However, it is well settled that an agency relationship is determined by the facts of the case and not how the particular parties characterize their relationship. Curry v. Welborn Transport, 678 So.2d 158 (Ala.Civ.App.1996).
Edwards testified that Union Camp accounts for approximately 90% of Evergreen's revenues and that Evergreen's continued existence is "highly dependent" upon Union Camp. Edwards further stated that Evergreen would do everything that it could within reason to please Union Camp and that he could not think of an instance in which Evergreen had not done anything asked of it by Union Camp. He said that when Evergreen is cutting wood on Union Camp property, Union Camp representatives "are out there every day" directing the details of what is to be done. Edwards testified that Union Camp instructs Evergreen what to do and then Evergreen relays the instructions to the loggers.
It is undisputed that while Cobb was performing logging operations for Evergreen, he cut wood primarily from property owned by Union Camp. Cobb testified that shortly after the logging operation began Shrantz visited him in the woods to provide him with the specifications on how to cut the wood, the size of the wood to cut, how the wood was to be cleaned, and how the wood was to be loaded on the trucks. Shrantz testified that he had visited Cobb in the woods after he began harvesting the wood to provide him with the specifications and to make "sure [Cobb] didn't have any questions about how the wood was supposed to be cut to be delivered to each facility." Cobb stated in his affidavit that on various occasions Mosley would direct him to move his logging operation from tract to tract, to cut in wet weather, and to do other actions inconsistent with normal logging operations. Cobb stated that when he would question Mosley about these directions Mosley would respond that "Union Camp wanted it done this way."
*506 Rhonda Bees, Evergreen's general manager and a former employee of Rocky Creek, testified that Evergreen performs the same function for Union Camp that Rocky Creek performed. Bees testified that Union Camp provides the specifications and instructions on how the wood is to be cut, how the land is to be left, what tract of land is to be cut, what type of wood to cut, and when it is too wet to cut.
Mosley testified that a Union Camp representative is in the woods monitoring the logging operation "all the time" and at least "several times a week." He stated that Union Camp is involved in the whole process of harvesting the wood and that it monitors such things as the loading of the logs onto the trucks, stump height, and stream crossings, and that it directs Evergreen where to build permanent roads, if necessary. Mosley further testified that on one occasion Union Camp requested that Evergreen and Cobb work on a Sunday.
Union Camp relies upon Lankford, supra, and Williams, supra, to argue that it merely retained the right to supervise or inspect the work of Evergreen and Cobb to ensure that the logging was being completed according to specifications and that its land and timber were not being damaged or wasted. The evidence does, in fact, indicate that Union Camp retained the right to supervise and inspect the logging operation to ensure compliance with the specifications. However, when the evidence is taken as a whole and viewed in a light most favorable to Cobb, we conclude that one could infer that Union Camp had reserved a right of control over the manner in which Evergreen and Cobb performed their work. Further, because the evidence was disputed, the question whether there had been a reservation of control was for the jury. Benson, supra. Accordingly, we conclude that the court erred in entering a summary judgment in favor of Union Camp on Cobb's claims pursuant to the doctrine of respondeat superior.
Cobb next argues that the trial court erred in entering a summary judgment in favor of Union Camp on his claim of intentional interference with business relations. The evidence in the record indicates that in February 1995 Schrantz told Mosley not to allow Cobb to cut wood any longer on Union Camp property. Recovery on a claim alleging intentional interference with business relations requires proof of four elements: 1) the existence of a contract or business relation; 2) the defendant's knowledge of the contract or business relation; 3) the defendant's intentional interference with the contract or business relation; and 4) damage to the plaintiff occurring as a result of the defendant's interference. Pakruda v. Cross, 669 So.2d 907 (Ala.Civ.App.1995). A party to a business relation cannot be held liable for interference with that relation. Bama Budweiser of Montgomery, Inc. v. Anheuser-Busch, Inc., 611 So.2d 238 (Ala.1992); Williams v. A.L. Williams & Assocs., Inc., 555 So.2d 121 (Ala.1989).
Although Cobb had contracted with Evergreen, the object of their contract, i.e., the wood to be cut, was provided by and located on Union Camp property. We conclude that Union Camp was an essential party to the business relationship between Evergreen and Cobb and, therefore, cannot be held liable for Cobb's claim of intentional interference with a business relationship. Accordingly, the summary judgment in favor of Union Camp was proper as to Cobb's claim alleging intentional interference with his business relationship with Evergreen.
Cobb next argues that the summary judgment in favor of Union Camp was improper as to his claims alleging *507 fraudulent suppression. The record reflects that the court originally set this case for trial on January 12, 1998. On June 12, 1998, and after the hearing on the summary-judgment motions, Cobb filed his motion for leave to amend the complaint to add a claim alleging fraudulent suppression against Union Camp. Rule 15(a), Ala. R. Civ. P., addresses amendments that are made more than 42 days prior to the date of the initial trial setting. Rule 15(a) provides that parties seeking to amend pleadings after that time must obtain leave of court before filing the amendments, and provides that the court will grant leave to file amendments after that time only upon a showing of good cause. Cobb sought to amend his complaint a full six months after the date of the initial trial setting. The trial court never ruled upon his motion for leave to amend his complaint, and from our review of Cobb's motion for leave to amend his complaint and our review of the record, we conclude that no good cause was established to compel the trial court to grant his motion for leave. See Ex parte Golden, 628 So.2d 496 (Ala.1993).
Finally, Cobb contends that the trial court erred in entering a summary judgment on his claims alleging conspiracy. Cobb argues that Union Camp and Evergreen conspired to defraud and fire him. "A civil conspiracy requires a combination of two or more individuals to accomplish an unlawful purpose or to accomplish a lawful end by unlawful means." McLemore v. Ford Motor Co., 628 So.2d 548, 550 (Ala.1993). A conspiracy requires an agreement or meeting of the minds between the conspirators. First Bank of Childersburg v. Florey, 676 So.2d 324 (Ala. Civ.App.1996). One cannot inadvertently become a member of a conspiracy. Id. Further, the "plaintiff must allege and prove that the claimed conspirators had actual knowledge of, and the intent to bring about, the object of the claimed conspiracy." Id., at 327.
After carefully reviewing the record, we conclude that Cobb failed to present substantial evidence from which one could infer that Union Camp and Evergreen had an agreement or a meeting of the minds to defraud or fire Cobb. Id. Accordingly, we conclude that the court properly entered the summary judgment in favor of Union Camp on Cobb's conspiracy claim.
The judgment, insofar as it related to Cobb's claims on which he sought to hold Union Camp liable under the doctrine of respondeat superior, is reversed. The judgment for Union Camp is otherwise affirmed. The case is remanded for further proceedings.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED FOR FURTHER PROCEEDINGS.
ROBERTSON, P.J., and YATES and MONROE, JJ., concur.
CRAWLEY and THOMPSON, JJ., concur in part and dissent in part.
CRAWLEY, Judge, concurring in part and dissenting in part.
I agree that the summary judgments on the claims alleging intentional interference with a business relationship, fraudulent suppression, and conspiracy are due to be affirmed. I dissent, however, and I join Judge Thompson's special writing, as to the reversal of two of the three "claims pursuant to the doctrine of respondeat superior": the claim alleging fraudulent inducement and the claim alleging promissory fraud.
On the claim alleging breach of contract, I conclude that the summary judgment was also correct. Cobb could not prevail on the claim alleging a breach of his written contract with Evergreen because that contract contains a termination clause. Cobb could not prevail on a claim alleging *508 a breach of an oral contract with Evergreen because that contract was void under the Statute of Frauds. See § 8-9-2(1), Ala.Code 1975.
THOMPSON, Judge, concurring in part and dissenting in part.
I concur with the majority in its affirmance of the summary judgment on Cobb's claims alleging intentional interference with a business relationship, fraudulent suppression, and conspiracy, but I dissent from its reversal of the summary judgment in favor of Union Camp on Cobb's claims pursuant to the doctrine of respondeat superior.
The record indicates that Union Camp did not compensate Cobb, did not supervise his hours, and did not involve itself in Cobb's hiring and firing of his crew members. Union Camp did not furnish Cobb's equipment or reimburse him for any of his expenses. The only evidence in the record indicating Union Camp had control over Cobb was evidence indicating that it supervised the logging operation to ensure compliance with the terms of its contract with Evergreen.
Although the majority states that the evidence pertaining to Union Camp's control over Cobb was "disputed," the only evidence I could find in the record indicating that Union Camp had reserved a right of control over the manner in which Evergreen and Cobb performed their work was the following statement in Cobb's nine-page affidavit:
"[W]hen Evergreen hired Tommy Mosley, Evergreen's Forester and Procurement Officer, on various occasions he directed me and my crew to change our operations, move around from tract to tract, cut in wet weather and do other actions inconsistent with usual logging operations. When my crew and I questioned Mosley as to why we were required to do these things, he repeatedly told us that Union Camp wanted it done that way. One time, Mosley directed my crew to work on a Sunday which we did despite the fact that we normally did not work on Sundays. Mosley told us that it was Union Camp that wanted us to work on Sunday."
The only facts Cobb alleges to demonstrate that Union Camp had reserved a right of control over Evergreen and Cobb was that Mosley had instructed him not to "cut in wet weather and do other actions inconsistent with usual logging operations" and that once Mosley had directed his crew to work on Sunday. In light of existing precedent, I do not view such vague and conclusory statements sufficient to defeat a properly supported motion for summary judgment. See Riggs v. Bell, 564 So.2d 882 (Ala.1990).
In Williams v. Tennessee River Pulp & Paper Co., 442 So.2d 20 (Ala.1983), our supreme court affirmed a summary judgment in favor of the property owner on a claim based on the theory of respondeat superior, holding that evidence that a property owner inspected the tracts being cut and monitored how the trees were cut was insufficient to support an inference that the property owner was controlling the logger's manner of performance. The Williams court pointed out that the property owner had a vested interest in how the timberland was harvested. The Williams court held that the property owner had a right to monitor the timber harvest to ensure that young trees were protected from injury while the mature trees were harvested. 442 So.2d at 21-22. In a more recent decision, the supreme court reached the same conclusion in determining whether a property owner was controlling the manner of the loggers' work when the owner specified the trees to be cut, the height of the stumps remaining after harvest, and the clean-up of the logging site. See Lankford v. Gulf Lumber Co., 597 So.2d 1340, 1344 (Ala.1992). Affirming *509 the trial court's summary judgment in favor of the property owner on the claim based on the theory of respondeat superior, the Lankford court held the property owner's supervision of the logging to ensure that the operation was being performed in compliance with the terms of its contract did not constitute control of the manner in which the logger performed his job and thus did not give rise to a claim under the theory of respondeat superior. Specifically the Lankford court noted that the property owner did not set the hours for the logger's crews or supervise the hiring and firing of members of those crews; did not provide or maintain the logger's equipment; and did not advise the logger on how to load his truck or haul the wood. 597 So.2d at 1343, 1344.
I conclude that Cobb failed to present sufficient evidence to create a genuine issue of material fact on the question whether Union Camp had reserved a right of control over the manner in which he and Evergreen performed their work. Therefore, I would affirm the judgment of the trial court in its entirety.
CRAWLEY, J., concurs.
NOTES
[*] Note from the reporter of decisions: When this case was released for publication, upon the denial of Cobb's certiorari petition, Union Camp's petition for certiorari review was pending in the Supreme Court. That certiorari petition was granted, and on June 1, 2001 (docket no. 1992122), the Supreme Court reversed the judgment of the Court of Civil Appeals and remanded the case for the Court of Civil Appeals to affirm the summary judgment in favor of Union Camp. As of August 21, 2001, case no. 1992122 was pending on application for rehearing in the Supreme Court.
[1] Evergreen is a "sister" company of Timberland Harvesters Corporation. Timberland Harvesters is a wood dealer that supplies wood to various forest-product companies. Evergreen was formed in order to purchase the assets of Rocky Creek and to service the contracts entered into with Union Camp. Edwards is Evergreen's president and owns 50% of its stock. Thomas is the vice-president of Evergreen and, along with members of his family, owns the remaining 50% of the Evergreen stock. Evergreen did not purchase Rocky Creek as an ongoing concern and did not purchase its stock.
[2] "Fee wood" is wood owned by Union Camp.
[3] "Market wood" is wood from other properties not owned by Union Camp.