We granted certiorari review to determine whether the Court of Civil Appeals correctly reversed a summary judgment entered in favor of Union Camp Corporation ("Union Camp") on a claim alleging respondeat-superior
liability. Because we find that the trial court properly entered the summary judgment, we reverse and remand.
 Facts and Procedural History
Before April 1993, Rocky Creek Logging Company ("Rocky Creek"), a wholly owned subsidiary of Union Camp, was responsible for harvesting 240,000 acres of timber owned by Union Camp in Butler County. Once the timber was harvested, Rocky Creek was responsible for transporting it to the Union Camp mills. In October 1992, Union Camp ceased the operation of Rocky Creek and offered its assets for sale. Lanier Edwards ("Edwards"), the president of Evergreen Forest Products, Inc. ("Evergreen"), negotiated with Union Camp, and Evergreen eventually purchased Rocky Creek's assets on April 2, 1993.
The purchase was documented in three agreements. Under a "Purchase and Sale Agreement," Evergreen agreed to purchase Rocky Creek's assets and equipment. A "Memorandum of Agreement" set forth Union Camp's agreement to provide Evergreen with a minimum 60,000 tons of "fee wood"[1] to harvest for one calendar year. Under a "Wood Supplier and Transportation Agreement," Evergreen agreed to sell 60,000 tons of "market wood"[2]
and to transport 400,000 tons of wood chips and 60,000 tons of other wood products to various locations designated by Union Camp. Each agreement identified Evergreen as an independent contractor.
Anticipating the purchase of Rocky Creek's assets, Edwards met with Joel Cobb ("Cobb"), an independent professional logger, in 1993; the purpose of the meeting was to inquire about the possibility of Cobb's forming a logging crew to harvest timber for Evergreen. Cobb alleges that he and Edwards entered into an oral agreement, pursuant to which, Cobb says, Edwards guaranteed him the right to harvest a minimum of 30,000 tons of fee wood and an equal amount of quality market wood each year for a minimum of four *Page 1041 
years. Cobb testified that he told Edwards that the agreement would have to be for a minimum of four years to allow him to finance and to pay for the equipment necessary to meet the harvesting contract. In addition to the alleged oral agreement between Cobb and Edwards, Cobb entered into several written contracts with Evergreen in 1993 and 1994, all of which were for a term of one year; all of which allowed Evergreen to terminate Cobb's services by giving 20-days' written notice; and all of which identified Cobb as an independent contractor.
Cobb began harvesting Union Camp fee wood for Evergreen in May 1993. Union Camp representatives were often on the property from which the wood was being harvested. Union Camp provided Evergreen with specifications and instructions on how the timber was to be cut, how the land was to be left, what tract of land was to be cut, what type of timber was to be cut, when it was too wet to cut timber, how the wood was to be cleaned, and how the wood should be loaded onto the logging trucks. Union Camp also monitored matters such as the height of the stumps remaining after the timber was cut, stream crossings, and where permanent roads, if such roads were necessary, should be built.
Cobb continued harvesting Union Camp fee wood until February 1995, when Paul Schrantz, a Union Camp representative, instructed Tommy Mosley, a forester and procurement officer for Evergreen, not to allow Cobb to harvest fee wood on Union Camp property any longer. Although Cobb alleges that Union Camp wanted Evergreen to replace him with a logger who had formerly worked for Rocky Creek, Union Camp alleges that Cobb's work was unsatisfactory. Evergreen terminated Cobb's services.
On December 19, 1996, following his termination, Cobb sued Evergreen, its corporate officers, and Union Camp. Cobb alleged that Evergreen and its officers were liable for breach of contract, fraudulent inducement, fraudulent suppression, and promissory fraud. Against Union Camp, Cobb alleged tortious interference with a business relationship and civil conspiracy. On October 17, 1997, Cobb amended his complaint to add arespondeat-superior claim against Union Camp; he alleged that Evergreen and its officers were agents of Union Camp and, therefore, that Union Camp was also liable to him on the claims he had asserted against those other parties.
On November 20, 1997, all the defendants moved for a summary judgment. On November 26, 1997, Cobb again amended his complaint to include a claim alleging conversion as to Evergreen. The trial court heard oral arguments on the summary-judgment motions on May 7, 1998. One month after the hearing, on June 12, 1998, Cobb moved, pursuant to Rule 15(a), Ala.R.Civ.P., for leave to again amend his complaint to allege additional claims of breach of contract and fraud against Evergreen and to allege a claim of fraudulent suppression against Union Camp. The trial court never ruled on this motion. On February 9, 1999, the trial court entered a summary judgment for Union Camp; it denied the summary-judgment motions of Evergreen and its officers. The trial court certified the summary judgment for Union Camp as final, pursuant to Rule 54(b), Ala.R.Civ.P.
Cobb appealed to this Court, which transferred the case to the Court of Civil Appeals, pursuant to § 12-2-7(6), Ala. Code 1975. The Court of Civil Appeals reversed the trial court's summary judgment in favor of Union Camp on Cobb's claims alleging respondeat-superior liability. The Court of Civil Appeals affirmed the summary judgment as to Cobb's claims *Page 1042 
of tortious interference with a business relationship, fraudulent suppression, and civil conspiracy. See Cobb v. Union Camp Corp.,786 So.2d 501 (Ala.Civ.App. 2000). Both Cobb and Union Camp filed applications for rehearing and motions to supplement the statement of facts in the Court of Civil Appeals' opinion, pursuant to Rule 39(k),[3]
Ala.R.App.P. On July 28, 2000, the Court of Civil Appeals overruled the applications for rehearing and denied both Rule 39(k) motions. Union Camp petitioned this Court for certiorari review, and we granted its petition.
 Analysis
This is an appeal from the trial court's entry of a summary judgment; thus, our review is de novo. EBSCO Indus., Inc. v. Royal Ins. Co. ofAmerica, 775 So.2d 128 (Ala. 2000). "When reviewing a ruling on a motion for a summary judgment, this Court uses the same standard of review the trial court used `in determining whether the evidence before the court made out a genuine issue of material fact.' Bussey v. John Deere Co.,531 So.2d 860, 862 (Ala. 1988)." Jefferson County Comm'n v. ECO Pres.Servs., L.L.C., 788 So.2d 121, 126 (Ala. 2000). Once the movant makes a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. Bass v. SouthTrust Bank of BaldwinCounty, 538 So.2d 794, 797-98 (Ala. 1989). "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assur. Co. of Florida,547 So.2d 870, 871 (Ala. 1989). In reviewing a ruling on a motion for summary judgment, we view the evidence "in the light most favorable to the nonmovant and entertain such reasonable inferences as the jury would have been free to draw." ECO Pres. Servs., L.L.C., 788 So.2d at 127.
Union Camp argues that the summary judgment in its favor as to Cobb's claims based on respondeat-superior liability was proper because, it says, Cobb failed to present sufficient evidence to create a genuine issue of material fact on the question whether Union Camp had reserved a right to control the manner in which Cobb performed his work.
The test used in determining whether a defendant may be held liable under respondeat superior is "whether the alleged employer has reserved the right of control over the means by which the work is done; the test is not the actual exercise of such control." Lankford v. Gulf LumberCo., 597 So.2d 1340, 1343 (Ala. 1992). Thus, to be held liable underrespondeat superior, Union Camp must have reserved the right to direct not only what work was to be done, but also how that work was to be done. See Lankford, 597 So.2d at 1343. "`Control is not established if the asserted [employer] retains the right to supervise the asserted [employee] merely to determine if the [employee] performs in conformity with the contract.'" Williams v. Tennessee River Pulp Paper Co.,442 So.2d 20, 21 (Ala. 1983) (quoting Bloedel Timberlands Dev., Inc. v.Timber Indus., Inc., 28 Wn. App. 669, 674, 626 P.2d 30, 33 (1981)).
Both Lankford and Williams involved the alleged respondeat-superior
liability of timber companies whose relationship with *Page 1043 
and activities in regard to timber harvesters were similar to those of Union Camp to Evergreen and Cobb. In Lankford, International Paper Company ("IPCo") owned land on which Gulf Lumber Company ("Gulf") had contracted for the right to cut and remove certain timber. Gulf contracted with Stimpson Forestry Products, Inc. ("Stimpson"), to cut the timber. Stimpson, in turn, subcontracted the logging work to Oscar Rivers and Rivers Tree Service, a professional logging company. When one of Rivers's employees was involved in an automobile accident that resulted in the death of Lankford's husband, Lankford filed a wrongful-death action, alleging that Stimpson, Gulf, and IPCo were liable under the doctrine of respondeat superior for her husband's death. Evidence was presented indicating that IPCo sent foresters to the area being cut to inspect and to ensure that the timber was cut in compliance with the timber-cutting agreement between IPCo and Gulf. Among other things, IPCo foresters would determine whether the stumps left after the cutting were the correct height, whether trash had been removed, whether the loggers were cutting the trees that had been designated for cutting, whether the roads or any structures the loggers had damaged had been repaired, and whether the roads, property lines, streams, and drainage ditches were clear of logs, timber, limbs, and debris. If an IPCo forester found a problem, he would contact Gulf or Stimpson and Gulf or Stimpson in turn would inform Rivers of the problem. Lankford, 597 So.2d at 1343. This Court held that the trial court's summary judgment in IPCo's favor as to Lankford's claim alleging respondeat-superior liability was proper because Lankford had failed to present substantial evidence that IPCo had reserved any right of control over the manner in which Rivers's work was done. The Court stated:
 "The right to control the means by which the work of a purported independent contractor is done was not established by showing that IPCo retained the right to supervise or inspect the job site to make sure that Gulf and Rivers were performing in conformity with the contract. . . . IPCo did not tell Rivers how to cut the trees, how to load his truck or how to haul the wood. IPCo also did not supply Rivers with any trucks, equipment, or fuel to use in the removal of the timber. IPCo did not have any say as to how much wood Rivers cut, how many days a week he worked, or how many hours he worked each day.
 "Although IPCo had a wood supply agreement with Stimpson and Rivers did deliver pulpwood to IPCo, IPCo did not issue any checks to Rivers. Rivers's delivery of pulpwood to IPCo does not indicate that IPCo retained any right of control over the manner in which Rivers completed his work."
Lankford, 597 So.2d at 1343-44. Thus, the Court held that the summary judgment was proper as to IPCo, because the evidence showed that Rivers was an independent contractor.
Likewise, in Williams, we held that summary judgment was proper against the plaintiff on a claim alleging respondeat-superior liability, where the only evidence presented was that the defendant, the owner of property from which timber was harvested, performed inspections to make sure that the right trees were harvested and supervised compliance with the contract specifications. We held that this evidence was insufficient to support an inference that the property owner controlled the manner in which the logging company performed its work. Williams, 442 So.2d at 21-22. *Page 1044 
In reversing the summary judgment for Union Camp as to the claim alleging respondeat-superior liability, the Court of Civil Appeals apparently relied on the language in Lankford that Lankford had not established IPCo's respondeat-superior liability because "IPCo did not tell Rivers how to cut the trees, how to load his truck, or how to haul the wood." Lankford, 597 So.2d at 1343. The Court of Civil Appeals stated: "The evidence does, in fact, indicate that Union Camp retained the right to supervise and inspect the logging operation to ensure compliance with the specifications," and that "when the evidence is taken as a whole and viewed in a light most favorable to Cobb, . . . one could infer that Union Camp had reserved a right of control over the manner in which Evergreen and Cobb performed their work." Cobb v. Union Camp,786 So.2d at 506. The "evidence" to which the Court of Civil Appeals refers includes Cobb's nine-page affidavit submitted in response to Union Camp's motion for a summary judgment, in which Cobb averred that Union Camp representatives provided him with specifications on how to cut the wood, the size of the wood to cut, how the wood was to be cleaned, and how the wood was to be loaded on the logging trucks. Union Camp moved to strike this portion of Cobb's affidavit, arguing that it was "conclusory and plainly [contradicted] Cobb's own deposition testimony."[4]
However, in his special writing concurring in part and dissenting in part, Judge Thompson noted that "[t]he only facts Cobb alleges to demonstrate that Union Camp had reserved a right of control over Evergreen and Cobb was that Mosley [an Evergreen forester and procurement officer] had instructed him not to `cut in wet weather and do other actions inconsistent with usual logging operations' and that once Mosley had directed his crew to work on Sunday." Cobb v. Union Camp,786 So.2d at 508 (Thompson, J., concurring in part and dissenting in part). Relying on our decisions in Lankford and Williams, Judge Thompson concluded that Cobb's "vague and conclusory statements" were insufficient to defeat a properly supported motion for summary judgment. We agree.
As was the case in Lankford, supra, Union Camp sent foresters to inspect the harvesting and to make sure that the timber was cut in compliance with Union Camp's contract with Evergreen. The Union Camp foresters would check stump height and "wood utilization"; they would make sure that the trees were properly cut and that the loggers were cutting in designated areas; and they would ensure that the loggers were following guidelines regarding the construction and use of roads on the property. Finally, when the Union Camp foresters discovered a problem with Cobb's work, they notified Evergreen, which in turn spoke with Cobb. It is undisputed that "Union Camp did not compensate Cobb, did not supervise his hours, and did not involve itself in Cobb's hiring and firing of his crew members." Cobb v. Union Camp, 786 So.2d at 508 (Thompson, J., concurring in part and dissenting in part). Additionally, there is no evidence indicating that Union Camp retained the right to control or to restrain, in any way, the business relationship between Evergreen and Cobb. Therefore, we agree with Judge Thompson that "Cobb failed to present sufficient evidence to create a genuine issue of material fact on the question whether Union Camp had reserved a right of control over the manner in which he and Evergreen performed their work." Cobb v. UnionCamp, 786 So.2d at 509. *Page 1045 
Because the facts of this case are indistinguishable from those presented in Lankford, supra, we conclude that the Court of Civil Appeals erred in reversing the summary judgment entered in favor of Union Camp as to its respondeat-superior liability. Therefore, we reverse the judgment of the Court of Civil Appeals insofar as it related to Cobb's claims seeking to hold Union Camp liable under the doctrine of respondeatsuperior and we remand this cause to that court with instructions that it affirm the summary judgment entered in favor of Union Camp.
REVERSED AND REMANDED.
Moore, C.J., and See, Lyons, Harwood, and Stuart, JJ., concur.
Johnstone, J., concurs specially.
Woodall, J., concurs in the result.
[1] "Fee wood" is timber owned by Union Camp.
[2] "Market wood" is timber from properties not owned by Union Camp.
[3] Rule 39, Ala.R.App.P., was amended effective May 19, 2000, as to death-penalty cases and August 1, 2000, as to all other cases. The provisions relating to statements of facts are now found at Rule 39(d)(5).
[4] The trial court summarily denied this motion, as well as other pending motions, after it granted Union Camp's motion for a summary judgment.